J^MIRIAM G. WALTZER, Judge.
The prosecution involves our supervisory power to review the ruling of the trial court on a Motion to Suppress.

STATEMENT OF THE CASE

On 30 July 2001 the State filed a bill of information charging the defendant with possession of marijuana, second offense, a violation of La. R.S. 40:966(D)(2). On 9 August 2001 he pleaded not guilty. On 23 October 2001 a hearing on the motions was held. On 14 December 2001 the trial court granted the motion to suppress the evidence. The State noticed its intent to file for writs and was given until 14 January 2002 to file its application. On 11 January 2002 the trial court granted the State’s motion for extension of time to 22 February 2002. On 22 February 2002 the court granted the State’s request and extended the return date to 28 March 2002. On 28 March 2002 the court granted the State’s motion for extension of time to 26 April 2002. The State timely filed its writ on 26 April 2002. The matter is set for a status hearing on 6 June 2002.

STATEMENT OF THE FACTS

At the 23 October 2001 hearing, Officer Jeffrey Vappie testified that on 31 March 2001 he observed the defendant’s car illegally parked on Wisner Blvd. on [ athe golf course. He and his partner pulled behind the defendant’s vehicle in order to cite him for the traffic violation. The officer stated: ‘When we walked up on the vehicle we observed two occupants, Mr. Sears and a female in the passenger side of the vehicle engaged in some type of sexual act.” The two were partially clothed. Officer Vap-pie’s partner ordered the two out of the car after they clothed themselves. The female exited, and then the defendant exited from the driver’s side. The two fixed their clothes. Officer Vappie said that the two were arrested for the municipal violation for lewd conduct. After the officers arrested the suspects and placed them in the back of the police unit, Officer Vappie went to secure the vehicle. The officer said: “And that’s the time — at which time I observed the marijuana on the floorboard of the vehicle, driver’s side.” The marijuana was “right by the seat, plain view.” The officer said that he used his flashlight before he “entered the vehicle and the light turned on.” The car was lighted by a dome light. The defendant received a citation for illegally parking on the golf course. Officer Vappie said that he went back to the defendant’s car to secure it. He explained: “That just means make sure the vehicle’s locked prior to us leaving and making sure no items are left in the vehicle that would cause someone to break into it and take like a cell phone or money or anything like that.”
On cross-examination Officer Vappie said that the defendant was cited for the parking violation, but arrested for lewd conduct. According to the police report, *422 the officers saw the defendant with his pants down and the female with her panties down. Officer Vappie did not know if the report indicated that any sexual activity occurred. He stated that the defendant was arrested for “lewd conduct,” he could not explain how lewd conduct related to sexual, activities. The officer said: “[T]hey were both partially naked in the vehicle.” When defense counsel asked |3what the officer saw the two doing, he replied: “We saw them trying to put their clothes back on.” Officer Vappie stated that there were signs to indicate that parking was not allowed on the side of the street with the golf course; parking was allowed on the bayou side. The officer indicated that the car was parked “[o]n the golf course, by some trees. It’s a real dark area.” He said that the car was parked “pretty far” off the road. The officer stated that “[t]hey were trying to hide behind some trees. The trees are a distance from the street. They were parked past the trees.” When defense counsel asked whether marijuana was found on the defendant’s person, the officer answered: “No. Just the smell. But, you know, can’t put that on the books.” The court asked whether it was the smell of marijuana, and the officer answered affirmatively. Defense counsel asked about the smell of marijuana in the car and whether that information was not included in either of the reports. The officer said: “It’s not important.” Counsel noted that the officer neglected to put that information in his report. Officer Vappie indicated that he was just answering defense counsel’s questions.
The officer said that only one joint was found in the car. When counsel asked if the officer had searched the vehicle, he stated that he" had secured it. He “checked the front area” where he “observed the marijuana.” He admitted that he went inside the car without a warrant or the defendant’s permission. Officer Vappie said that it was standard procedure to secure a vehicle once a person has been arrested. Officer Vappie stated that the defendant gave permission for the officer to secure his vehicle. The officer did not know if the vehicle belonged to the defendant. He admitted that he did not see the defendant throw down the marijuana. Officer Vappie indicated that the defendant was arrested for the marijuana because he told the officers that it belonged to him. The officer declared |4that the events in the report were chronologically listed. When counsel noted that the report indicated that the defendant was arrested for marijuana prior to making the statement that the marijuana joint belonged to him, the officer explained that both were being arrested for possession of marijuana. The defendant did not want his girlfriend arrested for marijuana possession; therefore, he made the statement. Officer Vap-pie denied that the officers threatened to arrest the girlfriend. . He reiterated that he could see into the .car with the use of a flashlight and the dome light in the car.
The State argued that when the officers approached the vehicle, the defendant and his girlfriend were naked from the waist down and were putting their clothes back on. The officer received the defendant’s permission to secure his vehicle. The marijuana was seen in plain view on the floorboard when the officer went to secure the car. The vehicle was illegally parked. The trial court noted that it was not sure “what leud [sic] conduct is.” The court noted that the concern was whether there had been a valid arrest.
On 14 December 2001 defense counsel argued that no crime of lewd conduct occurred, and the arrest was improper. The State countered that the defendant was pulling up his pants and his girlfriend was pulling up her underwear. Defense counsel admitted that. fact, but argued that *423 lewd conduct under the municipal code requires the intentional performance of a lewd act in a public place when such act is likely to be observed by a person. The only section of the code that could possibly apply would be the exposure of one’s genitals, and the officer did not state that he observed the exposure of the defendant’s genitalia. The officer testified that he saw the defendant putting on his clothes. Counsel contended that 1 ¡¡the fact that the two were parked off the road on the golf course under oak trees shows an attempt not to be observed by anyone.
DISCUSSION
The State argues that the arrest for lewd conduct was valid,[1] and the marijuana was in plain view and properly seized. It claims that Officer Vappie saw the defendant and the girlfriend partially naked; the defendant’s pants were pulled down. The officers told the two to get dressed. The State contends that the officers had reason to believe that the two occupants of the car were in violation of the municipal code defining lewd conduct.
Section 54-254 of the Municipal Code of the City of New Orleans provides:
Isla) It shall be unlawful for any person to commit the crime of lewd conduct.
(1) A person is guilty of lewd conduct if he intentionally performs any lewd act in a public place when such act is likely to be observed by a person.
(2) As used in this section, a lewd act is:
a. An exposure of one’s genitals; or
b. Sexual intercourse; or
c. Masturbation; or
d. Urination or defecation.
(b) Any person who is in violation of this section shall be punished by a fine of not less than $100.00 and no less than 30 hours of trash cleanup duties as a community service.
Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-1133, pp. 7-8 (La.9/9/98), 720 So.2d 1179, 1184.
The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief *424 that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ogden and Geraghty, 391 So.2d 434 (La.1980).
State v. Julian, 2000-1238, pp. 6-7 (La.App. 4 Cir. 3/14/01), 785 So.2d 872, 876-77, writ denied, 2001-1247 (La.3/22/02), 811 So.2d 920, quoting State v. Johnson, 94-1170, p. 4 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, 946.
In light of Officer Vappie’s testimony, it is not clear that the exposure of the defendant’s genitalia was observed. The officer said that the defendant’s pants were down, and he was attempting to put his clothes back on. The trial court questioned whether the arrest was valid at the end of the motion to suppress hearing:
Just out of my own curiosity, my only question is whether or not what the officer actually observed fits one of these categories for lewd conduct.
I agree that the golf course is a public place and if one is on the golf course, one could be observed by a person on the golf course. I agree with all of that. My only question is whether or not what the officer observed to be an exposure of one’s genitals or sexual intercourse or masturbation, elimination or defecation — that’s my only real question.
Defense counsel ^noted that there was no reference to genitalia in the motion. The court stated that it did not recall, but noted that the State argued that the panties were down., The court stated: “Arguably, there was genitalia to be exposed, if one’s panties were down.” Defense counsel argued: “Your honor, not if there’s a dress over. And again, we’re all guessing, we’re all speculating because it wasn’t elicited.” The trial court noted that defense counsel’s recollection was much better than that of the court. The court had already said that the State would have the court reporter prepare the transcript.
The trial court granted the motion to suppress the evidence. Generally, the trial court is vested with great discretion when ruling on a motion to suppress. State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239. Officer Vappie’s testimony did not clearly indicate the defendant’s exposure of his ^genitalia. The officer testified that he saw the defendant trying to put on his clothes. He did not say that he saw the defendant’s genital area exposed. The testimony did not show that the defendant “intentionally” performed “any lewd act in a public place when such act is likely to be observed by a person.” MCA § 54-245. Because the officer stated that he used his flashlight, the arrest apparently occurred at night when a person outside the vehicle could not see inside the car. Officer Vappie testified that the vehicle was parked far off the road in a real dark area; he noted that the two occupants of the car were trying to hide behind the trees. Therefore, the couple’s actions were not likely to be observed by anyone. If the arrest was invalid, then the evidence seized subsequent to that arrest purportedly pursuant to the plain view exception must be suppressed.
In light of the officer’s testimony, we are unwilling to reverse the trial court’s decision to suppress the evidence. The trial court did not abuse its discretion.
Accordingly, the application for supervisory writs is granted. Relief denied. Judgment on motion to suppress affirmed.
APPLICATION FOR SUPERVISORY WRITS GRANTED. RELIEF DENIED. *425 JUDGMENT ON MOTION TO SUPPRESS AFFIRMED.

. La.C.Cr.P. art. 211(A) now provides: "When it is lawful for a peace officer to arrest a person without a warrant for a misdemean- or ... he may give a written summons instead of making an arrest ....'' (Emphasis added) The comments to art. 211 indicate that the term "misdemeanor” includes municipal violations. "Under old Code of Criminal Procedure article 211, an officer was required to give a written summons instead of making an arrest when all the conditions imposed by the article were satisfied. Under the revised article, which was amended by Acts 1995, No. 769, § 1, an officer is givfen the discretion to issue a written summons instead of making an arrest only when áll of the conditions of the article are satisfied. Underlying the article's grant of discretion, however, is the necessity that there be probable cause to make a lawful arrest.” State v. Toney, 96-2226, pp. 1-2 (La.App. 4 Cir. 1/22/97), 687 So.2d 1048, 1051 (on rehearing).